Filed 12/23/13  In re R.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re R.G., JR., et al., Persons Coming Under the Juvenile Court Law. | D064138 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. J518205 & J518206) |
| v. | |
| R.G., SR., et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant R.G., Sr.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant G.G.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant D.M.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

This is the juvenile dependency case of two children, R.G., Jr., (R.G.) and T.G. (together, the children). R.G., Sr. (Father) is the children's father; G.G. is R.G.'s mother; and D.M. is T.G.'s mother. Father, G.G. and D.M. appeal the termination of their parental rights. In T.G.'s case, D.M. contends the court failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and erred by declining to apply the beneficial relationship exception (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i))[1] to termination of parental rights. Father joins in D.M.'s contentions, and he and G.G. contend that if D.M. prevails on either of her contentions, the sibling bond mandates a reversal in R.G.'s case. We affirm.

BACKGROUND

In August 2011, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for one-and-one-half-year-old R.G. and nearly five-year-old T.G. The petitions were based on G.G.'s and Father's cruelty to T.G. R.G. was detained in Polinsky Children's Center and T.G. was detained in the hospital, then the children were moved to a foster home. G.G. was arrested and jailed and remained in jail throughout this case. D.M.'s whereabouts were initially unknown.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

The dependency petitions were amended to add allegations that Father and G.G. neglected R.G., and G.G. physically abused T.G. In October 2011, the court made true findings on the amended petitions and ordered the children placed in foster care. The court ordered reunification services for Father and denied G.G. services.

In November 2011, the Agency located D.M. The children spent two weeks in a second foster home, then were moved to a third foster home in December. They remained there for the rest of the case.

In December 2011, the court found that visitation with D.M. would be detrimental to T.G. In January 2012, the court ordered reunification services for D.M., including supervised visits in a therapeutic setting when appropriate. In March, the court allowed D.M. to send letters and photographs to the social worker, for forwarding to T.G.'s therapist, who was to use discretion in introducing the letters and photographs to T.G. when appropriate. The court directed the social worker to facilitate communication between T.G.'s and D.M.'s therapists, so that D.M.'s therapist would be aware of the history, issues and goals. In April, the court gave the Agency discretion to permit telephone calls between T.G. and D.M., with the concurrence of T.G.'s counsel. In May, the court gave the Agency discretion to lift the supervision requirement for visits, with notice to T.G.'s counsel. In October, the court gave the Agency discretion to allow telephone calls and supervised visits between T.G. and D.M.

In December 2012, the court terminated reunification services. In June 2013, the court terminated parental rights.

ICWA

3

" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The tribe determines whether a child meets these criteria. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254-255; *In re Damian C.* (2009) 178 Cal.App.4th 192, 199.) The juvenile court and the Agency "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child . . . ." (§ 224.3, subd. (a).) If there is reason to know the case involves an Indian child, the Agency must give notice "to all tribes of which the child may be a member or eligible for membership . . . ." (§ 224.2, subds. (a)(3), (b); 25 U.S.C. § 1912(a).) We review the juvenile court's ICWA findings for substantial evidence. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1530.)

In 2010, during dependency proceedings in Riverside County for T.G. and D.M.'s older child,[2] a maternal uncle, who was also T.G.'s guardian, "reported that there is no American Indian ancestry in their background." D.M. "confirmed that there is no American Indian ancestry in her background." In February 2010, the Riverside County Court found that ICWA did not apply.

At the October 2011 detention hearing in the instant case, the court found that ICWA did not apply. During her first meeting with the social worker approximately one month later, D.M. said she had Cherokee heritage. The social worker asked her various questions, including whether any family members were registered with the tribe. D.M.

_____

[2]     That child is not involved in this case.

said she did not know, but would find out and report back to the social worker. The social worker did not hear from D.M., so in December she asked D.M. whether she had looked into the matter. D.M. said she had not, but would have the information at the next hearing. D.M. did not appear at the next hearing.

In early January 2012, D.M. filed an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2) [Parental Notification of Indian Status]) declaring, under penalty of perjury, that she might have Indian ancestry and a cousin, William B., might have more information. D.M.'s counsel told the court that D.M. did not have William's contact information. The court ordered the Agency to mail D.M. an ICWA-030 form (Cal. Rules of Court, rule 5.481(a)(4)(A) [Notice of Child Custody Proceeding for Indian Child]) and speak with her about any Indian heritage. That day, the social worker mailed D.M. the ICWA-030 form. Two days later, the social worker telephoned D.M. D.M. was unable to provide names of any of her relatives. She said she had spoken with her aunt in an attempt to gather additional information regarding Indian ancestry, "but she was told by her aunt that all of their family members with Indian descent were deceased." D.M. said she would meet with the aunt later that day for assistance in completing the ICWA-030 form. Several days later, D.M. told the social worker that she was having difficulty completing the form. The social worker told her to do her best and mail the form to the social worker.[3] In late January, the court again found that ICWA did not apply.

---

[3] The record does not contain an ICWA-030 form or disclose the name of D.M.'s aunt. Father denied any Indian heritage.

Substantial evidence supports the conclusion that there was insufficient reason to believe T.G. was an Indian child.  (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538.) D.M. claimed that William might have information about her Cherokee heritage, then two days later claimed that an aunt had told her "all of their family members with Indian descent were deceased."  This does not amount to even a hint (*Dwayne P. v. Superior Court, supra,* 103 Cal.App.4th at p. 258) or a suggestion (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848) that T.G. is an Indian child.  Moreover, in T.G.'s earlier dependency, there was a finding that ICWA did not apply.

## THE BENEFICIAL RELATIONSHIP EXCEPTION

If a dependent child is adoptable,[4] the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1); *In re Helen W.* (2007) 150 Cal.App.4th 71, 80-81.)  An exception exists if a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)  If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome . . . ."  (*Ibid.*) The existence of a beneficial relationship is determined by factors such as "[t]he age of

---

4       No one challenges the adoptability findings.

6

the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*Id*. at p. 576.) Examining the evidence in the light most favorable to the judgment (*ibid*.), we conclude substantial evidence supports the court's conclusion that the exception did not preclude termination of D.M.'s parental rights to T.G. The court stated that between February 2010 and May 2012, D.M.'s contact with T.G. was sporadic; their "relationship . . . consist[ed] of one year of supervised visits"; and there was no evidence that the parent-child bond outweighed T.G.'s "exquisite" need for permanence and her "enormous need to be in a stable, loving, caring household where she can be protected."

Before the advent of this case, T.G. lived at different times with Father and with a maternal uncle who became T.G.'s guardian. T.G. was removed from the uncle's care after his girlfriend tortured T.G.'s sibling in T.G.'s presence. During the times T.G. lived with others, D.M. had little contact with her. When T.G. lived with D.M., there were multiple child welfare referrals.

In this case, by the time D.M. was located in November 2011, she had not visited T.G. for approximately one year nine months. T.G. had no memory of her. The court found that visits would be detrimental to T.G. and ordered that visits occur in a therapeutic setting when appropriate. The first visit took place in May 2012. T.G. enjoyed their visits over the next 13 months, but did not seem bonded with D.M. and did not recognize her as her mother. D.M. sometimes was inappropriate during visits.

7

Six-and-one-half-year-old T.G. had spent little time in D.M.'s custody. In this case, T.G. spent time in a hospital and in three foster homes. She was in foster care for a total of nearly 22 months, including more than one and one-half years in her current foster home. The foster parents wished to adopt T.G. She was thriving in their stable home. T.G. was strongly attached to the foster parents, called them "mommy" and "daddy" and often stated she wished to remain in their home. T.G. was at a critical stage in therapy and her well-being required that she remain in a secure environment with consistent parental figures.

The court did not err by declining to apply the beneficial relationship exception.[5]

### DISPOSITION

The judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

---

[5] In light of our conclusions above, we need not discuss Father's and G.G.'s contention that if D.M. prevails on either of her contentions, the sibling bond mandates a reversal in R.G.'s case.